So far, I'm zero for two and keeping us on track. Do we need to take a break? I'm okay. So we're going to move on to our third case. You've probably lost all hope of keeping us on track, but we're going to still try. Still try. This one is a little bit tougher because you've got people speaking. So while you're getting seated, I'll explain. When I have a case like this, I make sure each attorney has a hard stop so that they can't eat up the other attorney's time. That probably rings hollow given that everybody's gone over so far. But I'm going to try to hold you to your time. I did want to make sure on rebuttal time because I'd really like to not have three different rebuttals. Is there anything? What's going on with that? Well, Your Honor, let me tell you how we've divided it up, and I'm afraid we've sort of each got sort of areas, so we probably do need some separate rebuttal time. But what I'm going to be taking – Reserve it. I'm going to reserve it. I have it right here in my notes. You actually have time left on your clock. My attitude is Your Honors take as much time as you want, of course. So you do want to have each one of you have rebuttal time. All right. Maybe I can be more specific, Your Honor. I'm going to address the insufficiency of evidence and deliberate ignorance issues. I'm Carl Gunn. I'm representing Mr. Bai. And I may address some of the individual Mr. Bai issues to the extent there's time. Ms. Chen is going to take five minutes and address the sentencing issues, which she was the briefer on, but I joined in. All of us joined in. And Mr. Pope wants to use five minutes to address severance issues. I'm going to reserve my ten minutes, two minutes for rebuttal. I'm going to try to salvage something here and try to hold you to that.  My colleagues have questions. Please take as much time as you want. But if you go clear through your time, there's no guarantee you will get rebuttal time. All right. I will watch for my time. I see ten minutes here, and I'll try to watch when it gets to the two. We'll go ahead and start now. Each counsel, please state your names for the record when you come up so we know. All right. And as I said, I'm Carl Gunn. I'm representing Mr. Bai. The first issue, Your Honor, is the insufficiency of the evidence, specifically the insufficient evidence of a concealment purpose. What really happened here, I would submit, is the government charged the wrong crime. There are two possibly correct ways of looking at Mr. Bai's, Mr. Hu's, and Mr. Xi's conduct. One is that it was the completion of the fraud because the whole purpose of the fraud wasn't to get these amorphous gift card numbers. It was to get money. And what they did was getting money from the fraud. The other way of looking at it is it was them buying stolen property. The people who got the fraudulent numbers wanted to sell them. They found Mr. Bai, Mr. Hu, and Mr. Xi, and they sold them to Mr. Hu and Mr. Xi, and that transaction was done. That's where the government story begins, right? I'm sorry? That's where the government story begins because I didn't see any evidence in the record of actual participation in the underlying fraud. Correct. I mean we've all gotten these phone calls saying you've got an outstanding warrant. Come down and give us gift cards, and the warrant will go away. I've often wondered why it is they insist on gift cards. I guess now I know. And I got one recently, and I gave them a lecture about it. There's no evidence that your client was involved in that. But I think that's exactly correct. Or if the government wanted to try to prove it, they could. They could charge him with conspiracy to wire fraud or mail fraud or accessory after the fact. If they want to try to prove that, great. If they want to try to prove receiving stolen property, either in federal court or state court, let them try. But this isn't money laundering. You have case law that has expressed real concern about expanding the breadth of this money laundering statute. It's not a common law type of crime. It's this crime that's been created, and the courts have expressed real concern, the Supreme Court and the lower courts, about this not being just a mere spending statute. And you have to ask yourself. I know I don't get asked the questions, but this is a rhetorical question. You have to ask yourself, what else could they have done to get the money? They had to do something with the gift cards. That wasn't – they didn't just want a bunch of gift card numbers. Does the racing – the fact that you've got to do this quickly before we get – before Target cancels the gift cards, does that indicate anything with regard to the laundering aspect? No, it doesn't anything. I think that's part and parcel of showing that if anything shows more that their real purpose was just to get the money, it seems to me. It doesn't show laundering. What about the fact that they would go and sometimes – did I read correctly that they would get other cards? So they would go – so that sounds like laundering, and it sounds like you're taking something that's – and you're turning it into something else that may not get caught. First of all, that wasn't what they usually did. If you look at the government's opening statement, which they quote at 38 of their brief, they say – They used electronics, right? Usually they bought electronic merchandise. This idea of getting separate cards or buying a small thing and getting another card, that was basically a backup way to sort of keep things frozen so they could get the money later. Look – if you'd look, I'd like to refer you, if I could, to several quotes of Mr. Bai's statements in the chats at page 20 of my brief. This is what he said. If what you bought is not what I wanted, you can get a refund back. If you have 300 or 500 balance, you can buy things and return them. If they cannot be cleared, then just buy and make them physical cards. That was clearly a backup way of making sure they got the money. It may have had a slight effect of concealment, though it didn't because if you read the target employee's testimony, they're able to trace them anyway. You wouldn't dispute that if I go in and buy a candy bar with a $500 stolen gift card and I'm handed back a new gift card with 496 balance remaining after my candy bar is paid for, that that is now a clean card. That's the laundering. Well, actually the target employee testimony says you can still trace to that card very easily. But second, your honor, it's – He was getting a clean card. But you have to look at his purpose, not the effect but the purpose. And the purpose here of getting that clean card was only so he could get the money the next day or buy electronics the next day and sell them to get the money. Couldn't the jury conclude that his intent in doing that was to get a brand new card number which had not been reported? I don't think on this record the jury could have found that beyond a reasonable doubt, your honor. It is crystal clear, I think, from the record in this case that what they were trying to do was get the money that the gift card numbers represented. And that was a backup way of doing it if they couldn't buy the right merchandise quickly enough. I really think that's the only and best fair reading of this case. Compare some of the cases that are out there. Compare the cases the government cites. Compare the same case the government cites. The cases talk about having direct evidence of intent to conceal or purpose of concealment. They talk about having complex transactions. In the same case, you had, one, a private Hawala system with confidentiality and pickup and delivery procedures, coded words and burner phones, serial number verification system. I'm still struggling with the fact that if I'm coming in with a big gift card, you know, what I would consider a big gift, $500, and I buy something small and get in. You know, normally you would not. You just keep the rest of your balance on that gift card. But I put it on a different gift card. How is that not to conceal? I mean, the only rational reason I could think to do that would be to conceal the source of the funds, which seems to fall within. Now, you're saying, yeah, but they're ultimately doing it so they can come in to – and the card they bring back will not be canceled by Target, but it's still to conceal. It's a quick backstop, though, and you have to look at the purpose. What is their purpose? Their purpose is not to conceal money here. Their purpose is not like your classic business money laundering. Well, it is to conceal, but then you're saying the ultimate purpose is to actually get the money. But isn't that true of all laundering? Like all laundering, you're trying to make sure that the IRS doesn't know or something so you don't lose the money. But sometimes you have money already, and you're processing it through three or four different banks. You're concealing it so that you can ultimately have – It seems to me your argument is – your argument seems to reduce to, no, their ultimate purpose was they just wanted the money, and they did these concealing things to make sure that the money wouldn't disappear on them. But that's kind of always the case with laundering. Right, but – well, it's not always the case with laundering because with laundering where you go through three – The reason you're always laundering is because you're worried if you don't launder the money, it will disappear. The government will take it or something, right? No, you don't want it identified as stolen money. Because why? Why do you care if it's stolen money? Because you don't want the government to charge you with a crime and put you in prison. And take your money away. No, it's not really take the money away. It's also put you in prison and find out you committed a crime. But why isn't the money the proceeds of specified unlawful activity? We're not arguing – on this issue, we're not arguing it's not the proceeds of specified unlawful activity. So it's dirty money coming in. But it's not – the purpose of the transaction, you need a – there's three elements. You need the transaction. You need the dirty money. You need a transaction with the dirty money. Which is either to acquire the electronic merchandise or to get a clean gift card. Right, and you need the purpose of that transaction to be concealed rather than just get the money. And that's the problem here. First of all, everything you're asking me about would only apply to the transactions where they got gift cards as opposed to buying merchandise. Clearly, buying the merchandise is not money laundering. And when you have this context and these sorts of factual evidence – If I receive stolen money and I use it to buy a good and then I turn around and resell that good for cash. I'm sorry. What was the first statement in here? If you get what? If I get stolen credit card numbers or credit cards and I use the card to buy a good, an electronic item. Correct. And I resell that electronic item for cash. Why isn't that money laundering? Because the – well, first of all, one of the cases I cite, the Oleaky case, and I'm horribly pronouncing that name, is exactly that case. It's how do you happen to keep the computer and use it instead of reselling it? Yeah. But if you're – I mean the whole purpose of this fraud is not for them to get a bunch – 50 computers. It's to get the money on the gift cards. Yeah, they got money on gift cards and are getting it in a different – The only way to get money on the gift cards is to buy a computer because you can't buy money with a gift card. You buy a computer, and then to get the money, you got to sell the computer. These – in the words of the McGehee case that I cite and brief, it's part and parcel of the fraud. The goal of the fraud is to get money, not gift card numbers or computers. If a money launderer takes stolen U.S. currency and buys Canadian currency with it, isn't that money laundering? Maybe depending on his purpose for buying the Canadian currency. It might – To avoid tracing the stolen – the money that was the proceeds of the fraud. Or if it's a Canadian citizen who lives in Canada and has to use Canadian money, it might be just so he can spend the – I don't know. I assume that the money that was sent back to Magic Lamp was communicated somehow electronically, wire transfers, or did they actually have couriers who carried it? They paid Magic Lamp, I believe, with Chinese currency and bank transfers. They did convert it to a foreign currency. Well, they sold the merchandise and deposited it in their bank accounts and then paid – but that was not the – They didn't want – I think that – yes. But that was not the – Why isn't that a classic money launderer? But that was not the money laundering that was charged. They weren't charging money. Was there evidence? That was just paying Magic Lamp for the stolen gift cards. With now clean money. Well, the only money that Magic Lamp could get – that was the only way Magic Lamp was going to get money. Well, they could have sent them some Target gift cards. No, they couldn't have because they didn't want the – they wanted money. The whole purpose of the fraud was to get money. We're taking you over, and I'm going to try to – I'm trying to – if we – I'll make sure and give you a minute for rebuttal time, and we'll move on to your co-counsel. All right. Well, I think the government – okay. I think one of the other counsels is going to address their issue. Sounds good. Thank you. Yes, I think the plan will be I'll address severance on behalf of Mr. Xi and Mr. Hu, and then my colleague, Ms. Chen, will address the sentencing issues. Good morning. Miles Pope for Tyrone Xi, and I'll be addressing, as I just said, the severance issue on behalf of Mr. Hu and Mr. Xi. I will try to reserve one minute, which may become 30 seconds, for rebuttal. The district court's failure to grant severance in this case meant that the jury heard highly prejudicial evidence that went to the heart of the most hotly contested issue in the trial, Mr. Hu and Mr. Xi's mental state, their awareness that the gift cards had been fraudulently obtained. The government's brief does not seriously contest the prejudicial nature of this evidence. Instead, the government essentially makes two arguments in defense of severance denial. The first argument is that Mr. Bai's mental state evidence would have been admissible even at a severed trial. And the second is that the court's limiting instruction cured any prejudice. Both of these arguments fail. With respect to the admissibility argument, that runs aground on the district court's own ruling in this case, the ruling that undergirded the limiting instruction it gave. Why is this any different from any 371 conspiracy where there are more heavily involved co-conspirators and lesser involved conspirators? The Pinkerton rules apply. If the jury finds that the activities were in furtherance of the conspiracy that the defendant knowingly joined, he's liable under Pinkerton for all of the violations that reasonably flow from that type of a conspiracy. Well, to the extent – two responses to that. The first is, again, we have the government's – or the district court's own conclusion that the evidence that was – against the Bai mental state evidence was not admissible and could not be used. And the jury was told, don't consider this evidence with regard to the other two defendants. This pertains only to the actions of Mr. Bai. So that – and perhaps I was – perhaps I'm syncing up with you now. That goes to the issue of the adequacy of the instruction. I think the adequacy of that limiting instruction, whether that limiting instruction was enough to – It's a pretty standard instruction. And then the jury was, again, reminded during the final set of closing instructions that they were to separately consider the evidence as to each defendant and that their determination of guilt or innocence on one count as to one defendant should not influence their – determination of the evidence as it pertained to the other two. Well, a few issues that I see with the – with that limiting instruction. The first was, as the briefings articulated, the timing at which it was given. So a limiting instruction, especially as it pertains to Exhibits 178 and 181, which were particularly damaging exhibits, was given Friday afternoon before they were testified to. And then the jury – at the very end – they're not testified to at the time the limiting instruction is given. The jury comes back on Monday and the court turns to the witness who's going to testify, not the jury, and basically reminds the witness this is under a limiting instruction. But that's not relevant to the witness. The witness is going to testify to it. It's the jury that needs to be reminded of that. So the timing is problematic. There are multiple – go ahead. But your argument would basically ask us to disregard Ninth Circuit authority that says that we presume that the jury follows the limiting instruction that the court gives. And the jury was told at least twice, once when the evidence was presented and once during closing jury instructions. And also, as I recall, by the prosecutor during closing argument that this evidence pertains only to Mr. Bai. So where's the error here? So the – first of all, we're not attacking the adequacy – we're not attacking the instruction directly. We're not saying the instruction itself was error to be given. What we're saying is that given the sort of inherently prejudicial nature of this evidence and a rimless hub-and-spoke conspiracy where you're getting – But you really are challenging the Ninth Circuit presumption that the jury listened to and followed the limiting instruction that it was given. No. I resist that. I'm not challenging the presumption. You're arguing that they forgot about it over the weekend. And so the court should have reminded them again on Monday when the witness got on the witness stand. The presumption can be overcome. And what I'm trying to point to with respect to that example – and there's a list of other issues with sort of the specifics of this case – is that in this case, that presumption was overcome. So one of the other key points, just to jump to sort of the crux, is the prosecutor's closing argument itself invited the jury to look back. The prosecutor began with these exhibits that were inadmissible against Mr. Xi and Mr. Hu and discussed them at great length. That was the opening line of the closing statement. Then it goes on both with respect to Mr. Hu and with respect to Mr. Xi. It calls back to that evidence. It does say at one point before discussing Mr. Xi that each defendant should be considered separately. That's what the jury instruction told us. Well, the jury instruction says more specifically you cannot consider certain evidence against the defendant. They don't repeat that. The prosecutor said now I'm going to turn to the evidence with regard to Hu and Xi. But they – in both the Hu – well, I guess in the Bai arguments they reference Mr. Hu and they blend the evidence and refer back to the inadmissible exhibits, refer to the inadmissible exhibits and say, look, this conversation that Mr. Bai had that was inadmissible, just like what he told Mr. Hu. And then in the Xi context it says – There was evidence of that Hu raised a concern, was there not, early on in his joining of the conspiracy. I forget exactly what he said, but it was basically is this legitimate. That's how I interpret it. Yes, absolutely. There was certain – of course, there were certain text – there were certain WeChat messages that were admissible against Mr. Hu. Hu and Xi were also notified that local police were starting to close in on other people that were engaging in similar behavior and that Target stores were under police surveillance and people were being arrested by – was it Fontana Police Department that arrested some people for passing these stolen Target cars? So you're absolutely correct. The government introduced certain WeChat messages that related – with focusing – There was a search warrant executed by Fontana and a copy of the search warrant was given to Mr. Bai, I guess it was, who then repeated to Hu and Xi that the police were conducting a raid. The issue is not sort of the bare legal sufficiency of the evidence as it pertains to Xi and Hu. The issue is that if you actually look at the WeChat messages that specifically reference fraud, use the word fraud. I'll go to intent. I guess what I'm having a hard time with your argument is it seems that there is evidence in the record that the jury could properly consider to find that Hu and Xi had the requisite intent here irrespective of the evidence relating to Mr. Bai's post-arrest conduct for which he was charged and convicted in count two. That evidence, in my view, was not overwhelming. But it's not a question of overwhelming. It's a question under the Virginia case as to whether or not a reasonable jury – it's sufficient to support a reasonable jury's conclusion of guilt beyond a reasonable doubt. So the issue with respect – the issue again is not – I apologize for misunderstanding the question, but I'm not challenging again the bare legal sufficiency here. What I'm arguing is that the failure to sever the case and the fact that the jury heard all of this other evidence about Mr. Bai's communications that otherwise wouldn't have been admissible. It goes back to my original question of how is this different from any other 371 conspiracy. I mean this is an argument that's made all the time. Counsel, can you give me your best case to justify severance? Give me your best shot. I mean I think it's the Supreme Court's – Kodiaka's case fundamentally is the best case in support of severance here, which is where the Supreme Court specifically calls out that in this particular context of a rimless hub-and-spoke conspiracy, you have a particularly heightened risk that the jury will blend mental state evidence. And do guilt transference from a conspiracy that is not admissible to the conspiracy that was charged. All right, counsel. I'm going to – I've done a terrible job of managing the clock once again, but I'll give you a minute for rebuttal time. That's a windfall. Thank you. And Ms. Chen, my credibility is shot at this point, but I'm going to try to hold you to five minutes. Oh, no. Don't start with me. You'll make me talk faster if you start with me, so may it please the court. Davina Chen on behalf of Boe and Hu. I'm going to argue the sentencing issues as to all of the defendants, but I'd like to focus today on the two-level enhancement under 2S1.1B3, which the court imposed on top of the four-level enhancement under 2S1.1B2C. So the imposition of that two-level enhancement was error for two independent reasons. First, the enhancement applies only if subsection B2B applied and subsection B2B did not apply in this case. Second, the enhancement applies only if the offense involves sophisticated laundering, and it did not. So I know the first of those two, because that's – focus on the first of those two things. That's the fact that B2B has to have applied. Yes, B2B has to apply. And it does say that. Yes, it says that B2B has to apply, and B2A, B, and C are in the alternative, and you can only apply one of them. And in this case, B2C applied. And since B2C applied, B2B did not apply, and therefore, B3 could not apply. Counsel, before we get too deep into this, why aren't we on plain error review here? You didn't make this argument before the district court, correct? All the parties did object to the enhancement under B3, and under Ninth Circuit precedent, it's clear that it's claims that can be forfeited, not arguments. And so they made the claim below that B3 should not apply, and this is an additional argument that I'm presenting on appeal with respect to why B3 doesn't apply. Even if plain error were to apply, the language is – it's plain. It says that B3 only applies if B2B applies, and in this case, B2B doesn't apply. The government's argument is that it could apply without applying, and they cite nothing in support of that. And it's basically not the way the guidelines operate. You apply something, and then – you do it in order. So first you determine which of the B2s apply, and when you're done with that, you do B3. And at that point, B2 didn't apply anymore. B2B didn't apply anymore because B2C had applied. Counsel, do you have the guidelines in front of you? Can we go to another guideline you talked about? That's not how the guidelines work. So section 3A1.2. 3A1.2. Yes, okay. That's with apply the greatest. 3A1.2 then A says if, one, the victim was a government officer, B or C, and then it has – and two, the offense of conviction is motivated by status increased by three levels. Okay. Subprovision B then says if subsection A1 and A2 apply, an applicable Chapter 2 guideline is from Chapter 2 increased by six levels. Yes. So how do you read that? Doesn't Provision B suggest that subsection A and 1 can apply even if you're not increasing the base level offense? Well, under 3A1.2A, you are increasing the base level offense level by three. So you're saying how this operates, 3A1.2, a defendant can be increased by three levels and then B could apply – the defendant can be increased by another six levels? No. I'm saying that it is that you apply the greatest. So you disregard A once you get to B. But how do you get to B if – how would B ever be triggered if I'm disregarding A? Because B says if subsection A1 and A2 apply. Doesn't that suggest that apply in this context means is applicable? You know, I haven't looked at this before. The government hasn't brought it to my attention before, and so I would be happy to look at it more carefully and submit the court with briefing. But I think that what is important to notice here is that the intent of this guideline is quite clear, that the six levels applies only, you know, if it's the greatest. And the intent is also quite clear with respect to 2S1.1. I mean, the commission— Yeah, I think, you know, the first time I'm hearing about it is I'm looking over my colleague's shoulder over here. But I think if this was like that, then you would either apply B2B and put 2, or you would apply 3 and put 2, and the 2 and 3 would just knock out the 2 and B2. But that's not what they're trying to do, right? They're trying to stack them on here. I'm not. What I'm saying is that they're not trying to stack them, right? But I'm saying the government's position. Yes, but exactly. The government's position is that they stack here, but the other one, they don't stack. It's clearly one replaces the other. So I'm not sure that this would be the same as that other example because this is not an attempt to stack, which I think it's clear that the other one's meant to stack, whereas this one, it's—I mean, the other one is to replace. You either do 3 or you do 6, the greater of. And then in this one, you would do 2 or 2 if you approach it the same way. It could be 2 and 2, which would be 4. And I think this is really significant. I mean, when I was preparing for argument, I broke down 2S1.1 a little bit so that I could understand it. And we have to remember that 2S1.1 is a really complicated guideline because it covers two different kinds of laundering, 1956 and 1957, and two different types of launderers. So it covers direct launderers and third-party launderers. And it's very careful in terms of its proportionality. It sets base offense levels with respect to—I see that I'm running out of time, but I'm hoping that you'll let me at least finish this point.  I'm about to tell me what my clerk told me, so keep going. Okay, so that it's clear that if you read the reason for the amendment, they're trying to set things proportional to the underlying offense. So A1, it's for direct money launderers, and it sets it in relation to the underlying offense. A2 is for third-party launderers, and it adds for loss. But then there's another provision, plus six, that only applies to third-party money launderers. So these first parts, A1, 2, and B1, are all about what is the underlying conduct. And then we have these other provisions that are about what is the laundering conduct. And 2A and 2B apply to direct launderers and third-party launderers equally. Okay? I'm getting to the key point. I know it's like a huge setup, Judge Todd. Can I get to my key point? Yes. Okay, so then for the direct launderer, you skip over C. C cannot apply to the direct launderer. You go all the way to three. So the direct launderer can get plus four if they get the two under 2B and the three. That's the most they can get is plus four. The third-party launderer also can at most get plus four because they go to C, and the commission hasn't bothered even requiring that they be sophisticated for them to get the plus four. The commission is giving them the plus four for being in the business. But there's no indication that they also would get a plus two on top of the plus four. The plus four is the ceiling. Isn't the government's position that they were, in essence, in the business of laundering funds because there was no evidence that they actually participated in the underlying fraud that produced the stolen cards and numbers to begin with?  So that's why they get the plus four. But they don't get the plus two on top of the plus four. Okay, then we'll see what they have to say if that's correct. All right. I think I'm going to cut you off at eight minutes and give you another minute for rebuttal just like everybody else. Thank you, Your Honor. Thank you. And since we're going to hold the government to a higher standard in 20 minutes if possible. 20 sounds like a long time, so. You may proceed. Good morning, Your Honors. May it please the court, Meredith Healy for the government. I also represented the government at the trial in this matter. There are a number of issues raised across these three appeals. I'm going to focus on the issues that we discussed, that we've been discussing so far. And the first of those issues is the issue of the sufficiency of the evidence. Why don't you start with the sentencing enhancement? That would be most helpful to me. Absolutely, Your Honor. I'm happy to do that. Okay. So as to the question of which standard here applies specifically to the sophisticated laundering issue, it is plain error. And the reason for that is because there was not an objection made as to the legal interpretation of this specific provision before the lower court. The only objection that was made before the lower court was whether there was sufficient factual evidence. So I understand. I mean, that argument makes a certain amount of sense because it seems a little unfair if the lower court is never told what we're being told to say the lower court erred by not concluding. The problem is the Ninth Circuit's arguments versus claims, the statement that you can't waive arguments, you can just waive claims. And they did seem to challenge the sophisticated laundering enhancement generally. I understand, Your Honor, that there's been discussion of that in Curulic, I believe, where they say that it is claims that are waived, arguments that are preserved. But then you have this court's 2024 decision in Hackett where the defendant in that case made a similar argument that is being made here as to whether intended. I think that in the lower court, the defendant had challenged the basis for calculating intended loss, but did not take issue with actually using intended loss in the first place. They made a distinction between that factual, the first factual argument before the lower court and the legal argument that was then made on appeal. And this court in Hackett did not see those two as being fairly characterizable as the same. And so our position, the government's position, would be that these two cannot be, they're not of the same, these claims are different. The claim that was made in the lower court was a factual claim as to the evidence that supported the sophisticated laundering enhancement. The claim that is now before this court is a legal argument as to how the court should interpret the sophisticated laundering provision. If we didn't think it was de novo, what is, how should we understand? If you did think that it was de novo? Yeah, if we do think so. If you applied de novo, I think that you look to the plain language first of the text and the instructions in the guideline. And when you look at. Because when I read it, it, you know, while you're turning it, when I read it, I see three, it says there's subsection B2B applies. And the government's argument is, well, what that means is if it could have applied. And I think our colleague pointed out another section that where it makes sense to read it that way. But I would say what would probably do in the work without having it right in front of us, probably doing the work in that other section, is the fact that it's clearly written as a, as it's either this one or that one, like a greater than, whereas here it's a stacking. So, it seems to me that plain language says that you only apply three if B2B applies. Well, I think, so if you, the way that the district court interpreted it is they started with B2B. Was the defendant convicted under 1956 increased by two levels? There was a 1956 conviction here. Then you go to 2C. If A2 applies, defendant was in the business of laundering funds, increased by four levels. So, both B. And you think that, so then that yields a total of six? It's four at that point because although both B and C apply, because they're under the apply the greatest structure. How can both apply when the instruction says apply the greatest? Because. Doesn't that suggest you apply one of the three provisions? Yes, you apply one of the three. So, but both apply because the defendant was in fact convicted under 1956. There was a 1956 age conviction here. So, then that's plus two. So, that's plus two. Right. But then you continue as the guidelines instruct. You, when it's this structure with apply the greatest, you look at the next enumerated provision under this specific offense conduct enhancement. And that is, if there's a 1956 conviction, and the defendant was in the business of laundering funds, which the defendants concede they were in the business of laundering funds here, then you increase by four levels. And so, between two and four, because you are applying the greatest, even though both apply, you apply the four. Then you move on to B3. B3 is a different enhancement. We are moving from, we are moving essentially from B2, B3, now we're talking about sophisticated laundering. And you say, okay, if subsection B2B applies, it doesn't say was applied, which is how the defendants ask that it be interpreted. It doesn't say if it was used. It just says if it applies. It does apply because the defendants were convicted of 1956 here. And so, that first part of B3 is satisfied. And you move to whether the offense involved sophisticated laundering, which it did here. So, you increase by two levels. So, you take the four. Can I ask you about, so structurally, you know, if you look at this as, you've got two different types of money launderers. You have direct money launderers and you have people that are third-party money launderers, right? And that's an A1 and A2, as I understand. And is my clerk correct that B2C only applies to third-party money launderers? That would only ever apply to third-party money launderers? So, in other words, the actual, what applied in this case, B2C, the four-level enhancement, is for somebody who's a third-party money launderer. It would not apply to a direct money launderer. I think that's a fair reading, yes. Okay. So, it seems like if you're trying to make sense of what they were trying to do here, that you basically, if you are a third-party money launderer and you're in the business, then you're going to get four levels. And then if you're not a third-party money launderer, you're a direct money launderer, but you're doing sophisticated, you get four levels. You get two plus two. You get B2B and you get three. That seems to make some sense. There's a symmetry there? I don't know. It seems like that's a way to read it as what they were trying to do. I think another way to read it is to look at the purpose behind each of the enhancements. If you take the business of laundering funds enhancement, the purpose of that is to address laundering that is done over a regular period of time, routinely, with frequency. That behavior, that offense conduct, is what business of laundering funds is aimed at addressing. Sophisticated laundering has a different purpose behind it. Sophisticated laundering, the purpose of that is to address conduct that is intended to make it more difficult for law enforcement to detect the laundering, trace the transactions. And so from a purpose perspective, the two enhancements are intended to address different conduct. Judge Van Dyke's argument, if I'm understanding the question, and also Ms. Chen's argument, which is structurally, if you were right, a third-party money launderer could be enhanced more than a direct money launderer. The ceilings would be different. Why would it make any sense for a third-party money launderer to have a ceiling that's higher than a direct money launderer? Your Honor, I am – one moment, please. Thank you for the court's indulgence. There's a distinction between the direct money launderers and the third-party money launderers, and we made that distinction. We emphasized it in the papers below. And the distinction is that the direct money launderers, they are laundering their own proceeds. They are laundering their own – the money from their own underlying conduct. It is the third-party money launderers who actually are facilitating others' crime. They are encouraging and allowing the conduct of other criminals to continue. And so that is why those individuals should have a higher enhancement as well. The other thing that I would mention for your honors is that there hasn't been a case out of this court or any circuit that has interpreted this provision the way that the defendants asked that it be interpreted. And, in fact, the 11th Circuit in 2024 affirmed a sentence in which both the sophisticated – It was published in this – Yes. Yes, Your Honor. Indra Moth case in this unpublished – is that right? Yes, Your Honor. And Wilson Grant Lagoa, which I hate to argue with them, but it doesn't seem like they really grappled with – they didn't have the benefit of Ms. Chinn's argument either. So, you know, I – We are – certainly, Your Honor, I'm not – There's a little bit of a drive-by thing going there. I only acknowledge that the sentence was affirmed and that no court – no circuit court has interpreted it the way that the defendants asked that it be interpreted here. I mean this is a pretty sophisticated scheme in the sense that it involves foreign countries, different currencies, the urgency of spending these cards before the victim discovers the fraud and deactivates them. Yes, Your Honor. We thought that there was ample evidence before the lower court to support the finding that there was sophisticated laundering here. I mean – And this was a two-week trial, right? The court sat and heard all this evidence. That is correct, Your Honor, and the evidence showed that a victim could be defrauded, go and purchase a card, and 13 minutes later – that card was purchased in Illinois. Thirteen minutes later, that card is laundered in California to purchase electronics. So it was a very sophisticated network that used runners that were on standby, that were going to 16-plus targets, 16 targets in a day, and they were engaging in the sort of sophisticated transactions that were designed to conceal the location of the victim's money. Can I get – I want to make sure you – the minor participant for Xi, can I get you to talk about why that was appropriate to apply that when the district court did not seem to go through each of the things that we've said that you need to go through. We've gone through the five factors. I'm sorry, Your Honor. The – The minor participant – that Xi was not a minor participant. You know, Xi had asked for the minor participant – Yes, Xi had asked for a – And the district court rejected it, and, you know, on the surface, because he was a manager, so it seems like there's an inconsistency there. But our case law does seem to say you have to go through those five factors. And I've had other cases where we've said, well, they didn't really talk about this factor or that factor. I think, Your Honor, the district court sat through a two-week trial, as you know. Her testimony from 27 different witnesses saw the hundreds of exhibits that were exchanged via WeChat between all three defendants and saw the messages specifically involving the defendant Xi where he exercised control over – Yeah, so it seems to me completely supportable, to be clear about my question. It's completely supportable that Xi was not a minor participant to reach that conclusion. I guess the bigger question is almost a procedural one. Did the district court procedurally do it right in rejecting that by apparently just relying on the fact that he was a manager, that he had people under him, as opposed to going through the five factors that the commentary talks about? You know, the degree to which the defendant understood the scope and structure, the degree to which the defendant participated in planning. And it's particularly that issue that I ran into before where showing that he's not substantially less culpable than the average participant, which is always tough for me because you don't know what the average participant is. Why did he not err in that regard? I apologize, Your Honor. I guess – and the record here is very vast. I don't know that minor role was actually addressed before the district court. I think during the sentencing hearing, the only issue was the application of the plus three for the manager supervisor. I don't think that there was – I don't think that Mr. Xi's counsel argued for the minor role enhancement to apply, so it wasn't before the court to consider. Who over here would address that on your side? Okay, so I'll maybe ask you about it when you get back up. Okay. If you have nothing more to say on it, that's fine. Not at this time, Your Honor. Other than I think that in the – in Defendant Hu's excerpt of record at pages 46 to 47, I think there is some discussion of Mr. Xi during the sentencing hearing. But again, I don't believe that the issue of minor role was addressed during the hearing itself. Would Your Honors like to hear about the purpose of concealment, or would you like me to turn to the severance issue? I don't think I need to, but – There are no questions on those issues? Is there any other issue that you would like to hear from me on? I don't think so. Your Honor, then I would – Your Honors, I would cede the rest of my time, and I would ask that this court affirm the convictions and affirm the sentences. Thank you, counsel. Thank you. I appreciate the helpful argument from the government, and we will go one by one with your one minute each, starting with Ms. – We're going to keep it one minute because I'm taking all of their time. Right? That was the only issue. The only issue. Say that again? So they've ceded their time to me. Okay. So we're going to give you – okay. I'm not giving you a minute. No, I'm just kidding. You can put one on there, but you already know I'm not going to hold you to it, so go ahead. Are you conceding? Tomorrow it may be – or on Friday it may be one of these other judges. I'm sorry. I have to write the page number down. Is it 304? 304 and 360. Okay. So I just first wanted to address very briefly the Schur issue before I forget because I will get rolling and I will forget. So Mr. Schur did raise this issue at CER 304 and 316. The government responded to it in its papers, and Ninth Circuit law is, again, very clear that nothing more needs to be done to preserve a sentencing guideline error than raising it in your paper. The fact that it wasn't discussed at argument during the sentencing is not relevant under the Ninth Circuit's law. And it's clear in this case that the judge didn't think he needed to address it because, as the probation officer had said, since aggravating role applies, mitigating role doesn't apply. So with respect to whether it was raised, I think it was clearly raised, and I think that the district court clearly erred in denying it without any discussion. What did it need to have discussed? It needed to have done the analysis of all the factors that would have made it a mitigating role. And the interesting thing about aggravating role is if you supervise only one person, you can get an aggravating role adjustment. So if you have an operation that has 100 people in it and you're number 99, you could get an aggravating role adjustment because you supervised one person, right? But you're still a mitigated role with respect to the 98 people above you. So they're not mutually exclusive the way that the probation officer – Is that what we have here, though? You described a hypothetical factual situation. Well, we could talk about all the magic lamp people. We don't know how many magic lamp people there were. That's a common problem that I've seen in these is we always have – they always say, well, I'm a really low person on the totem pole. I can't tell you anything about the myriad numbers of people in this vast criminal conspiracy above me, even though I think it's supposed to be their burden to show that – to get the minor role. But we're just supposed to assume that it's really big up – it's really top – all the criminal organizations are super top-heavy, and I'm the bottom person or the second from the bottom person. Well, he's like the second to the bottom person, right? Sure, because there's like magic lamp – well, before magic lamp, there's a fraudster. But how can we consider that? How can we consider that? And I'll make sure you get to your other issue. But seriously, I'm curious about this because I've ran into it in other cases. How can we actually consider – because you don't – nobody's really – this is kind of par for the course. Nobody ever gives me – here's the flowchart criminal organization of the triad that I'm part of. Like they don't do that. They just – they want us to assume – they say I don't know anything about this because that's one of the other factors. I don't know anything about this organization. But then their attorney does a good job of arguing that it is so. We all know it's vast and that this is a low-level person. It's just – the commentary factors are very – they're not good. I don't like them. They're not – they're hard to – they seem like they always weigh in favor of somebody getting a minor role adjustment as long as they say they don't know anything about the organization. Okay, so two things. One, the sentencing commission operates in a mysterious manner, and so you don't like them. But we do know – what we do know about minor role is that in 2015 they promulgated an amendment saying people are not getting minor role enough. They are not getting minor role in the way we intended them to. So now we've got this huge list that district courts are required to consider before they make a decision. So even though you don't like it, the commission wants more people to get minor role. Why are they required to consider the commentary when the guidelines themselves are not binding? So that's a really interesting question. The Ninth Circuit, after Kaiser, held that the Ninth Circuit – the judges are required to consider these factors. So whether that's correct or not, I don't know. What case are you referring to, Clinch? I think you're referring to Clinch. But they also said in Castillo – they said something kind of the opposite in Castillo, not about this issue. Not about this issue, though. Right, but the general principle in Castillo held Kaiser made it so that if the guideline text is not genuinely ambiguous, then I do not need to look to the guideline commentary. I am not bound by the commentary. Why wouldn't that principle apply here? Well, it would except for two things. One, Castillo was about the guidelines added on to – I mean the commentary added on to the guideline. So the guideline said you had to have these kind of crimes, and the commentary said, and conspiracies, et cetera. So that was a case – Whether it added to it or not, it was a spin or an interpretation on the guideline, right? And we have that here. We have an interpretation of what minor participant means. And also, what happened to our discussion in the in-bank decision in Cardi where we said the district court does not have to engage in a long dialogue as to all of the factors that it considered as long as a reviewing court can ascertain from the record the court's reasoning? I mean, we can look at the evidence and the pre-sentence report in particular, which the district court adopted, and answer the questions even if we were to apply those factors. I'm not so sure that that's the case with Mr. Scherr and mitigating role, honestly. So trying to answer all these questions in order. One, I think that the question whether minor is ambiguous or not – because if it's ambiguous, then we can go to the commentary – is quite a different question from Castillo, which is whether substantive offense is ambiguous in such a way that we could go to the commentary and decide that a conspiracy is also a substantive offense. But you agree that if I find that minor participant is not genuinely ambiguous, right? That's Kaiser's language. And I have to exhaust all the traditional tools of interpretation. I look to the structure, dictionary definitions, and all the rest. And after all that process, I find that minor participant is not ambiguous. I don't need to look at the factors, right? I agree with that.  I just think it's possible that the word minor is ambiguous. And then even if it were or were not ambiguous, this question about how does the person who's at the bottom identify the roles of all the people on the top, in this case he couldn't, but the record was very clear that there were quite a few people on the top. There were the actual fraudsters. Like there's no suggestion that Magic Lamp was the actual fraudsters, right? So there are the actual fraudsters. Then there was Magic Lamp. Then there was Bai. And then there was Hu. And then Hu allegedly recruited Xue. Hu was my client, so I'm not going to say he did recruit Xue. But what I'm saying is that in terms of minor role in this operation, there is a question that it was minor. And Judge Barat did not answer that question, right? He didn't address it at all. Can't we look at the sentence he imposed? Can't we look at the sentence imposed? Bai got the most, then Xue, and then Hu, right?  No, no. It was the other way. Bai got the most, Xue got the middle, and Xue got the least. So we know that at least the judge did think he was the least culpable, but he didn't go through the analysis, which is still required after Booker, after Kaiser, that you get the guidelines right. Why did he not look at the contents of the pre-sentence report, which was pretty extensive? Right, exactly. The pre-sentence report said he couldn't get minor role because he got aggravating role. Right. Right? That's what it said. It didn't say I've done the analysis with respect to minor role. It said it supervised a co-conspirator. Right. Yes, Yanfu or second sister. But if there's, let's say, at least five fraudsters on top, and then there's Magic Lamp, and then there's Bai, and then there's Hu, then Xue is like the third from the bottom when there's two. That's if you're applying that commentary test. But I've always found that to be sort of a, I mean, in some ways it sounds like you're saying, yeah, the commentary language here leads to one conclusion, but I'm not sure that if we were to just ask whether or not this person's a minor participant, relying on sort of common understanding of minor, that it seems to be pretty easy to uphold the denial of a minor participant because this is somebody who's managing other people. He's worked his way up in the organization. But if you apply that one factor of the five, then it might lead to a different conclusion. So that kind of leads us back to the commentary. I think you had said, well, that other case, Castillo or however it is, is different because it's sort of arguably changing. It's using the commentary to change the guidelines. But I don't know. Here it feels like it might be in that boat too. And this is all something that Judge Barat was supposed to decide, right? We're up here deciding what is the criteria for minor role when Judge Barat didn't even consider the issue. Did I understand correctly? You said that it was never brought up to him, but it's still somehow preserved. No, no, no, no. It was in all the sentencing papers. It was at E.R. 304. Sure, E.R. 304 and 316, he argued for minor role. The government in its papers argued against minor role. Then you go to court and you go through all of the— And it just was never discussed during— It was never discussed. But, again, the Ninth Circuit is very clear that raising an objection in the sentencing paper is sufficient to preserve the issue. And this kind of goes to what I wanted to say with my main issue, which is— The plain error test— Put another minute on that. Let's get to what you wanted to talk about. That goes to whether it's plain error or not. And I think I heard you say that that's not really fair to the district court judge if it wasn't discussed. But in the Supreme Court case of Henderson, the Supreme Court was really clear that plain error is not like a system to judge, scoring system for judges. So it really isn't a matter of whether it was fair to the district court or not. It's a matter of whether there was error. And this is an error that takes years out of the lives of our clients. So I think that it isn't under a plain error standard of review. Even if it were, I cite at page 29 of my reply numerous cases where no court has ever decided an issue, and yet the Ninth Circuit holds it plain based on the plain text of the guideline. And I would argue that the plain text of the guideline clearly favors our argument. The government argues that B2B applies even though B2P says apply the greatest. I don't know. I mean, I'll look at your example later, but I don't know how B2B could apply when it says apply the greatest and B2C applied. Assuming we're on de novo review, so forget the plain error review for a second. If I think based on that other provision that 2S1.1 is ambiguous, don't you also have the rule of lenity that you can refer to? Yes, I also do have the rule of lenity if we are on de novo review, yes. And clearly the fact that we've been discussing it for this long shows that it would be somewhat ambiguous, and therefore the rule of lenity would apply. The government was stumped for a moment as to why the third-party launderer would get a plus six potentially, whereas the direct money launderer would only get a plus four. And when they came back, they said it was because they're worse because the conduct encourages crime, but that's why they get a plus four without even being sophisticated. If you look at the reason for the amendment, that's what the commission even says. They get a plus four without even being sophisticated because the commission agrees that's bad. The government talks about how this is a different harm. I agree it's a different harm, but the sentencing commission is really clear that you don't just add up the harms. That's why they often have apply the greatest. At Chapter 1. It also occurred to me that if you're in the business of money laundering, you're not very good at your business. If you're not sophisticated.  So it just seemed to me like it seems like they're built in. Of course it's going to be sophisticated. It's just going to be. And so that's already assumed that it's going to be sophisticated. It's highly likely that it would be sophisticated. Right. But the commission is even saying, even if it's not, even if it's bad, like not sophisticated. If you're in the business, you get the plus four, but we're not going to hit you with another plus two. And that I also wanted to quote from the sentencing commission that talks about because the government says, well, it's a different harm. Right. The relationship between punishment and multiple harms is not simply additive. It would not be proper to assign points for each kind of harm and simply add them up, irrespective of context and total amounts. And I went through the question on the do you agree with the government? I mean, there is that one 11th Circuit case. And they said they said there was no decision that that goes the other way. I think there are, as I understood it, having having looked at this, there is an 11th Circuit case that's unpublished and seems to reach. It does what they say, but it doesn't really explain it. The doesn't explain why anything at the depth of what we've been talking about it here this morning. Then there are a bunch of other cases that do apply it the way you're saying. I don't know that there's any other cases other than 11. I don't know if there's any case going either way that is really described. Are you aware of any? No, but what I am aware of is that in district court, generally it doesn't get applied because we object. Right. Because the courts don't apply both of them. And then there's no appeal unless the government's going to appeal. And they very, very rarely appeal sentencing guideline issues. So that would kind of explain for the lack of any actual cases discussing the issue that we're talking about. We generally prevail in district court. And then there is no appeal. The 11th Circuit case, as you said, it doesn't even address the issue. It doesn't really discuss at all, really, whether or not they could apply based on the language of it. And then one other point I wanted to make is that I went through the guidelines to find out other cases in which there was sophisticated means and in the business. And I found two examples. And both of them were plus 2 and plus 2. In other words, you get a maximum of plus 4 for being in the business and sophisticated. There's no reason why suddenly in 2S1.1 the Sentencing Commission would say that adds up to a plus 6. And I think it goes back to what we've been discussing, that there is no reason why the Sentencing Commission would want to create a possibility that third-party launderers and third-party launderers alone are susceptible to the plus 6. All right. Well, I feel like time inflation once again, but I really appreciate the argument from both sides in all of our cases this morning. And this will wrap up our – Judge Tong got a lot of extra time than it was on the case. He's supposed to have added his first argument. Yeah, thank you both to all of your time. Thank you. And we'll be back on Friday. All right. Thank you.
judges: TALLMAN, VANDYKE, TUNG